IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **Case No. 1:21-cr-16** |
| v. | ) | **Judge Stephanie L. Haines** |
| | ) | |
| MICHAEL BENNETT | ) | |

<u>**MEMORANDUM OPINION RE: MOTIONS FILED AT
ECF NO. 151, ECF NO. 152, AND ECF NO. 153**</u>

Pending before the Court are Defendant Michael Bennett's Motion to Dismiss Counts

One and Two of the Indictment for Duplicity or to Compel the Government to Elect Between

Multiple Offenses Contained in the Same Count (ECF No. 151), Motion to Sever Counts in the

Superseding Indictment (ECF No. 152), and Motion to Dismiss the Superseding Indictment

(ECF No. 153). The Government filed its Omnibus Response to the Defendant's Pretrial

Motions (ECF No. 154), and Bennett filed his replies (ECF Nos. 155, 156, 158, 159). The Court

heard oral argument on November 19, 2025, and supplemental briefing followed. *See* ECF Nos.

171, 172, 173. The record is now closed, and the motions are ripe for disposition. For the

reasons that follow, Bennett's motions will be denied.

I.      **Background and Procedural History**

This case originates from an investigation into online child sex abuse material that began

in 2019. The Court previously summarized the factual background of that investigation as

follows:

> On May 9, 2019, Tumblr, a microblogging and social network website based in
> the United States, reported to the National Center for Missing and Exploited Children
> ("NCMEC") that a user of Tumblr account "magnificentlittlesecrets" had uploaded three
> files and received another four files that were believed to contain child sexual abuse
> material. ECF No. 71-1, ¶13. The complaint filed by Tumblr included the files in question
> as well as several IP addresses that had made posts to the "magnificentlittlesecrets" account
> between March 27 and April 4 of 2019. *Id.* ¶¶13-15. NCMEC referred the complaint to

1

the Pennsylvania State Police. *Id.* ¶16. In late 2019, the Pennsylvania State Police referred the matter to Special Agent ("SA") Michael Thoreson of the FBI. *Id.*

> SA Thoreson reviewed the seven files associated with the "magnificentlittlesecrets" account and determined that all of them contained suspected child pornography. ECF No. 71-1, ¶16. After learning that the relevant IP addresses had been assigned by the internet service provider Charter Communications, SA Thoreson caused an FBI administrative subpoena to be served on that entity for the purpose of obtaining subscriber information related to the implicated IP addresses. *Id.* ¶17. In response to the subpoena, Charter Communications advised that three of the IP addresses in question were assigned to subscriber D.T.,[1] whose service address was listed as 913 West 6th Street, Erie PA 16507. *Id.*

> Based on this information, SA Thoreson queried Pennsylvania Bureau of Motor Vehicle records and learned that D.T. has a Pennsylvania driver's license, issued on January 1, 2020, which lists his address as 913 West 6th Street, Erie, Pennsylvania. ECF 71-1, ¶19. After conducting surveillance and observing D.T.'s registered vehicle at that address, *id.*, SA Thoreson obtained a search warrant to search the residence at 913 West 6th Street for child sex abuse material. *See* ECF No. 71-1. The warrant was issued on May 27, 2020 and executed on the morning of June 3, 2020. ECF No. 71, ¶¶7-8.

> At the time of the warrant's execution, both [Defendant Michael] Bennett and D.T. were living at the West 6th Street residence, and both individuals were present upon the agents' arrival. ECF No. 71, ¶¶9-10. During the search process, D.T. and Bennett were taken into separate areas of the house and individually questioned. *Id.* ¶11. While D.T. was ultimately cleared of any involvement in the suspected child abuse material, Bennett allegedly made incriminating statements. *Id.* ¶12.

> As a result of their search, federal agents recovered numerous items, including external storage media, a laptop, and two iPhones. ECF No. 71, ¶13. An initial search of the external hard drive media revealed the presence of material alleged to be child pornography. *Id.* ¶14.

Mem. Op. dated Apr. 11, 2024 (ECF No. 91).

In April 2021, a grand jury returned an indictment charging Bennett with one count each of receiving and possessing material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. §§2252(a)(2), 2252(b)(1), 2252(a)(4)(B), and 2252(b)(2). Bennett was originally represented by Attorney Sean Logue, but Mr. Logue withdrew from the case on July 8, 2021. Attorney Kelvin Morris then took over Bennett's representation.

---

[1] Because the subscriber was ultimately cleared by the FBI of any wrongdoing, the Court redacted his name from its opinion and referred to the subscriber by his initials ("D.T.").

On October 16, 2023, Mr. Morris filed a motion on Bennett's behalf to suppress certain physical and digital evidence as well as statements that Bennett allegedly made on the day agents searched his home. Following briefing and an evidentiary hearing, the Court denied Bennett's suppression motion in a ruling issued on April 11, 2024. ECF Nos. 91 and 92. The Court subsequently scheduled trial for August 12, 2024. ECF No. 96. On July 31, 2024, Mr. Morris filed a motion to withdraw from the case, and that motion was granted on August 6, 2024. ECF Nos. 99, 106.

Bennett's present counsel, Assistant Public Defender Katherine Dyer, entered her appearance in this case on August 9, 2024. ECF No. 108. Public Defender Elisa Long later entered her appearance on Bennett's behalf on May 6, 2025. ECF No. 119.

On August 16, 2024, the Court held a telephonic conference to discuss a possible trial date of December 16, 2024. ECF No. 110. Attorney Dyer represented that she would continue to gather discovery and advise the Court as to the feasibility of the December trial date. *Id.* After conferring with the parties again on September 30, 2024, the Court established a trial date of June 3, 2025. ECF No. 112.

On April 28, 2025, Ms. Dyer filed a motion to continue the June 3, 2025 trial date, explaining that Bennett's forensic expert was no longer available to provide consultation in this matter or testify at trial. ECF No. 116. Two days later, the case was transferred from United States District Judge Susan Paradise Baxter, the original presiding judge, to the undersigned. ECF No. 117. The Court granted Bennett's request for a continuance and established a new trial date of September 15, 2025. ECF No. 124.

On July 22, 2025, the grand jury returned a superseding indictment, which added a third count charging Bennett with the distribution of material depicting the sexual exploitation of a

3

minor, in violation of 18 U.S.C. §§2252(a)(2) and 2252(b)(1).  ECF No. 127.  Bennett later filed

a motion to compel the production of certain evidence, which the Court granted in limited part,

directing the Government to produce the complete FBI 302 report of the investigatory interview

of D.T., along with any rough notes or other material pertaining to that interview.  ECF Nos.

139, 143, 144.

On August 27, 2025, Bennett again moved to continue the trial date, and the Court

granted that motion, setting the current trial date of January 12, 2026.  ECF Nos. 145, 149.  The

Court also extended the deadline for any additional pretrial motion to September 10, 2025.  ECF

No. 149.  Bennett's pending motions to sever and/or dismiss charges followed.  ECF Nos. 151,

152, 153.

Each motion having been fully briefed and argued, the matters in dispute are now ripe for

disposition.  The Court's rulings follow.

## II.    Legal Analysis

### A.  *Defendant's Motion to Dismiss Counts One and Two of the Indictment for Duplicity or to Compel the Government to Elect Between Multiple Offenses Contained in the Same Count (ECF No. 151)*

At Counts One and Two of the superseding indictment, Bennett is charged with the

receipt and possession of child sex abuse material ("CSAM") during a ten-year period, from in

and around November 2010 to in and around June 2020.  Bennett argues that, in actuality, he is

being prosecuted for two discrete instances of alleged receipt, which have been improperly

joined together in Count One, and two discrete instances of alleged possession, which are

improperly joined together in Count Two.  Bennett notes that the CSAM recovered by the

Government derives from two separate forensic sources:  (i) an external hard drive that was last

4

accessed in 2013, and (ii) a Tumblr account that was utilized in 2019. He posits that each source of CSAM gives rise to a discrete criminal offense which must be separately charged in the indictment and proven at trial. In his motion at ECF No. 151, Bennett requests that the Court dismiss Counts One and Two of the superseding indictment as duplicitous. Alternatively, he asks that the Government be required to choose which offense it intends to prove at trial.

"Duplicity is the joining of two or more distinct offenses in a single count, so that a general verdict does not reveal exactly which crimes the jury found the defendant had committed." *United States v. Moyer*, 674 F.3d 192, 204 (3d Cir. 2012) (citation and internal quotation marks omitted); *see also United States v. Steiner*, 847 F.3d 103, 114 (3d Cir. 2017). Whether an indictment is duplicitous is a question of law for the court. *Moyer,* 674 F.3d at 204.

In *United States v. Moyer, supra*, a police chief convicted of falsifying documents argued on appeal that the indictment should have been dismissed as duplicitous, because it alleged multiple false statements in multiple police reports, all of which were charged in a single count. In addressing this challenge, the U.S. Court of Appeals for the Third Circuit began its analysis by "ascertaining 'the allowable unit of prosecution to decide whether the indictment properly charges a violation of the pertinent statute.'" 674 F.3d at 204 (*quoting United States v. Root*, 585 F.3d 145, 150 (3d Cir. 2009)). The relevant statute was 18 U.S.C. §1519, which criminalizes the falsification of "any record, document, or tangible object" with intent "to impede, obstruct, or influence" a federal investigation. The court noted that:

> [t]he word "any" is defined as "[a]n indeterminate derivative of one ... in which the idea of unity ... is subordinated to that of indifference as to the particular one or ones that may be selected." Oxford English Dictionary (3d ed. 2009) (online version Dec. 2011). Courts have consistently rejected duplicity arguments when the statute employs "any" as a signifier regarding the "allowable unit of prosecution." *See e.g., Root*, 585 F.3d at 150–151 (explaining that multiple years of tax evasion may be combined in one count for violation of 26 U.S.C. § 7201, which

criminalizes any willful "attempts in *any* manner to evade or defeat *any* tax imposed by this title...." (emphases added)); *United States v. Brimberry*, 744 F.2d 580, 583 (7th Cir.1984) ("We find that these separate actions of the defendant were in furtherance of the sole object of destroying all Stix records in Miller's possession, and ... these actions constituted a continuing course of conduct."); *United States v. Berardi*, 675 F.2d 894, 898 (7th Cir.1982) (concluding that an indictment may combine three separate attempts to influence a witness's testimony into one count of obstructing justice by "threats or force, or by any threatening letter" in violation of 18 U.S.C. § 1503).

*Id.* at 204-05.  The court in *Moyer* found that the indictment was not duplicitous because the charge in question "allege[d] a continuing course, between July 12, 2008, and March 30, 2009, of falsifying the 'record'[2] to obstruct a single federal investigation -- and identifie[d] multiple reports that were created to that singular end[.]" 674 F.3d at 205.

In the present case, Bennett is charged with violations of 18 U.S.C. §2252.  That statute criminalizes the receipt "by any means including by computer" of "any visual depiction" that involves minors engaged in sexually explicit conduct.  *See id.* §2252(a)(2).  As noted, Bennett is charged with violating this provision in Count One of the superseding indictment. The statute also makes it unlawful for an individual to knowingly possess or access with intent to view matter containing "any visual depiction" of minors engaged in sexually explicit conduct. *See id.* §2252(a)(4)(B).  Bennett is charged at Count Two with violating this provision.  As in *Moyer*, the relevant criminal statute in this case uses the term "any" as "a signifier regarding the allowable unit of prosecution," 674 F.3d at 204 (citation and internal quotation marks omitted), which cuts against Bennett's assertion that the charges at Counts One and Two are internally duplicitous.  Beyond this, the statute is "silent" as to whether each visual depiction and/or

---

[2] The court also noted that the word "record" could also "fairly be interpreted as the collection of official police reports."  674 F.3d at 205.

electronic medium must be the subject of a separate criminal charge, *see Moyer*, 674 F.3d at 204, and Bennett cites no controlling decision from this circuit so holding.[3]

But even assuming that the component offenses in Counts 1 and 2 of the superseding indictment could have properly been charged in separate counts, that does not mean that the superseding indictment is impermissibly duplicitous. *See Root*, 585 F.3d at 155 ("[A] single count of an indictment should not be found impermissibly duplicitous whenever it contains several allegations that could have been stated as separate offenses, but only when the failure to do so risks unfairness to the defendant."). In other words, this Court's analysis does not end with considering the allowable unit of prosecution. "Because the government has discretion to draw [t]he line between multiple offenses and multiple means to the commission of a single continuing offense," *Moyer*, 674 F.3d at 205 (citation and internal quotation marks omitted), we must

_____

[3] The out-of-circuit decisions on which Bennett relies all involve concerns about multiplicitous charges – *i.e.*, situations where the court found that multiple charges in an indictment gave rise to only a singular unit of prosecution. *See, e.g., United States v. Naidoo*, 995 F.3d 367, 373 (5th Cir. 2021) (defendant's possession of child pornographic images that were spread across multiple SD cards and a hard drive comprised only a single allowable unit of prosecution); *United States v. Chilaca*, 909 F.3d 289, 292 (9th Cir. 2018) (defendant's simultaneous possession of child pornography images, stored in different media and found in the same location created only a single unit of prosecution; "simultaneous possession of different matters containing offending images at a single time and place constitutes a single violation of [18 U.S.C. §2252(a)(4)(B)]"); *United States v. Dudeck*, 657 F.3d 424, 431 (6th Cir. 2011) (directing the district court to determine whether possession occurred on different dates, transferred to different media, and whether there was overlap between images alleged received or possessed in consideration of double jeopardy concerns on remand); *United States v. Pires*, 642 F.3d 1 (1st Cir. 2011) (two counts of attempted receipt of CSAM involved only one unit of allowable prosecution because there was no evidence "that the two files at issue here were received in separate and distinct transactions"). None of these cases addressed allegations of a continuing course of criminal conduct, nor does the Court find anything in the reasoning of these decisions that undermines the validity of the Government's charging decision in this case.

"'examine the concerns traditionally associated with charging in one count what could be several independent charges.'" *Id.* (quoting *Root*, 585 F.3d at 154). "These concerns include: (1) avoiding doubt that a general verdict may mask a finding of guilt as to one crime but not another; (2) avoiding risk that the jury was not unanimous as to any one of the crimes charged; (3) providing the defendant adequate notice; (4) supplying an adequate basis for sentencing; and (5) protecting against double jeopardy." *Id.* (citation omitted).

Bennett contends that he is at particular risk of a general guilty verdict or a non-unanimous verdict in this case. He reasons that "half of the members of the jury could convict [him] on Count 2 on the theory that he possessed visual depictions of minors engaged in sexual behavior on the external hard drive while the other half convicts on the theory that he possessed such visual depictions on the Tumblr application." ECF No. 151 at 3. He insists that the images derived from the hard drive and those derived from the Tumblr account constitute "at least two separate instances of possession, separated in time by at least 6 years (i.e., 2013 to 2019) and as much as 9 years (i.e., 2010 to 2019)," *id.*, which the superseding indictment "treats as a single instance, effectively reducing the government's burden to secure a conviction on the possession counts by making it prove only half of what it has charged." *Id.* Such a result, Bennett argues, "would violate the Sixth Amendment's unanimity requirement because the jury did not agree on what conduct was criminal and thus did not make a unanimous finding as to which act was a crime." *Id.* at 3-4 (citing *Ramos v. Louisiana*, 590 U.S. 83, 87 (2020)).

As Bennett recognizes, however, multiple acts of criminal conduct may properly be incorporated into a single charge where there is a "continuous course" of criminal conduct. In *United States v. Root*, 585 F.3d 145 (3d Cir. 2009), for example, the defendant was appropriately charged with a single count of tax evasion covering a 3-year period, because he had engaged in

8

consistent, evasive conduct during the years in question. *Id.* at 154. The court observed that "the evidence relating to each year is identical and it would be logically inconsistent for the jury to find [the defendant] guilty in light of his 2001 conduct, but not guilty based upon the same conduct in 2002 and 2003." *Id.* In addition, the defendant could not point to a valid sentencing concern, because he had been convicted on a single three-year count of tax evasion, rather than three single-year counts of tax evasion. *Id.* "In such circumstances," the court explained, "duplicity may actually inure to a defendant's benefit by limiting the maximum penalties he might face if he were charged and convicted on separate counts for what amounts to a single scheme." *Id.* (citation and internal quotation marks omitted).

In this case, the Government has charged Bennett, -- at Counts 1 and 2 respectively -- of engaging in a continuous course of unlawful receipt and possession of CSAM from approximately November 2010, to approximately June 2020. The heart of the parties' dispute is whether the Government appropriately charged a "continuing course" of criminal conduct during that timeframe. The Government insists it has, while Bennett contends it has not.

As noted, the Government's forensic evidence at trial will include CSAM that was allegedly obtained from an external hard drive found at Bennett's residence and last accessed in 2013. The Government will also present forensic evidence of CSAM that was allegedly obtained from the Tumblr account "magnificentlittlesecrets" in 2019. As for the intervening years, the Government intends to introduce Bennett's alleged admission to law enforcement on June 3, 2020, that he had been engaged in viewing child pornography since approximately 2011 and that he had last viewed such material "a couple of months ago." In addition to these admissions, Bennett allegedly disclosed the following information:

9

- he utilized his white chrome book computer, a former cellphone, and possibly his current cell phone to obtain and view child pornography;

- no other devices or storage media were used by him to save or store such material;

- he did not download or save the child pornography files he viewed on any of his computer equipment;

- no one else was involved with his viewing of child pornography and he did not distribute child pornography to anyone;

- he frequently deleted the child pornography from his electronic equipment, going through multiple cycles of obtaining child pornography and then deleting it sometime later;

- child pornography was something that sooths him when he is depressed, and he gets "endorphins" from it;

- he was diagnosed with depression in approximately 1991-92 but no longer takes medication and has not seen a doctor or therapist in the last ten years;

- he began watching child pornography with his former girlfriend while the two were dating during approximately 2011-2014;

- he had received and viewed several different types of child pornography but is only interested in child pornography depicting girls;

- he obtained child pornography via Tumblr and WICKR applications;

- he has approximately 3-4 gmail accounts in variations of his real name and approximately 3-4 gmail accounts in "fake" names that he utilizes for various purposes, including acquiring child pornography;

- among the email accounts he utilizes is "Sarah[redacted]@gmail.com"; and

- he probably utilized the Tumblr account "magnificentlittlesecrets," which was established with the "Sarah[redacted]@gmail.com" account.

The Government maintains that this information is sufficient to establish a continuing course of criminal conduct during the time period charged in the indictment. This raises a

10

secondary question about the propriety of relying on Bennett's alleged admissions to establish criminal conduct.

In *Opper v. United States*, 348 U.S. 84 (1954), the Supreme Court addressed the extent of corroboration that is necessary as a matter of law in order for a defendant's admission to support a judgment of conviction. *Id*. at 92. The Court ruled that "the corroborative evidence need not be sufficient, independent of the [defendant's] statements, to establish the corpus delecti." *Id*. at 93. Instead, the Court held, the Government must "introduce substantial independent evidence which would tend to establish the trustworthiness of the statement." *Id*. Under this so-called "trustworthiness doctrine," it is sufficient "if the corroboration supports the essential facts admitted sufficiently to justify a jury inference of their truth." *Id*. "Those facts plus the other evidence besides the admission must, of course, be sufficient to find guilt beyond a reasonable doubt." *Id*. "Each element of the statement need not be independently corroborated," provided "there is sufficient evidence to establish that the statement, as a whole, is trustworthy." *United States v. Varela-Garcia*, 87 F. App'x 795, 798 (3d Cir. 2004) (citation omitted).

Here, the Court finds that Bennett's alleged admissions to law enforcement are sufficiently corroborated by independent evidence to satisfy the standard articulated in *Opper*. Of particular importance to the Government are Bennett's alleged statements that he had been viewing child pornography since approximately 2011, that he last downloaded and viewed child pornography "a couple months ago" (correlating roughly to early April 2020), and that he had gone through multiple cycles of obtaining child pornography and deleting it at a later point in time. Independent forensic evidence (*i.e.*, CSAM dating from 2010 to 2013 obtained from the external hard drive and CSAM dating to 2019 derived from the implicated Tumblr account) corroborates Bennett's alleged involvement with CSAM during the front and back ends of this

timeframe.  The Government will proffer evidence at trial that circumstantially ties Bennett to these two sources.

Beyond this, the fact that the recovered CSAM involved images of prepubescent females is corroborative of Bennett's alleged statement to agents that he was only interested in child pornography depicting girls.  This alleged remark by Bennett is also consistent with a statement made by the user of the "magnificentlittlesecrets" Tumblr account in 2018 that the user had "always been attracted to little girls."

Bennett's alleged ongoing involvement with CSAM is further corroborated by the contents of certain Tumblr chats recovered from the "magnificentlittlesecrets" account.  According to the Government, "magnificentlittlesecrets" acknowledged in May 2019 that "[t]his is probably my 7th tumblr in the last 3 years. Because sometimes I feel so guilty about it, and I just delete everything. But I keep coming back." See ECF No. 171 at 8.  This forensic chat evidence, obtained by the Government in 2024, corroborates Bennett's alleged oral statements to agents in 2020 that he had gone through multiple cycles of obtaining and deleting child pornography.  The time-period referenced in the chat correlates roughly to the time-period May 2016 to May 2019.

Other content recovered from the "magnificentlittlesecrets" Tumblr account corroborates the user's interest in and involvement with child pornography during this time.  According to the Government, "magnificentlittlesecrets" expressed to "babylola84" a sexual interest in minors and received three images of CSAM in a conversation dated December 1, 2018.  In a conversation with a different Tumblr user occurring in late November and early December 2018, "magnificentlittlesecrets" self-identified as a "pedo," acknowledged an attraction to "little girls," and expressed an interest in chatting about "sick twisted pedo stuff."

During his interview with agents, Bennett allegedly confessed to using Wickr as a means of obtaining child pornography. Because Wickr is an end-to-end encrypted communication service which can only be decrypted by the intended recipients, the service provider (Amazon) is unable to provide the content of Bennett's Wickr communications. Nevertheless, Bennett's alleged use of Wickr as a means of obtaining CSAM is independently corroborated by statements that "magnificentlittlesecrets" made on Tumblr to others. In Tumblr chats occurring in April and May 2019, for example, "magnificentlittlesecrets" referenced messaging others on Wickr. And during the June 2020 search of his residence, Bennett reportedly opened his Wickr application with his fingerprint (confirming that he had a Wickr account).

Bennett points out that, contrary to his alleged admission about using his white chrome book and cell phones to obtain and view child pornography, no evidence of CSAM was recovered from those sources. Moreover, no evidence of deleted CSAM was found on those devices, which is inconsistent with his alleged admission of engaging in repeated cycles of obtaining and purging child sex abuse material. However, the forensic evidence on this point is not totally exonerative. According to the Government, CSAM metadata shows that at least some of the material found on the external hard drive was transferred onto that device from a different device labelled "Michael Bennett's MacBook," and other data lists "HD/Users/michaelbennett/Library/Application." The Government notes that the MacBook referenced in the metadata was not recovered during the June 2020 search of Bennett's residence. The Government also points to the Tumblr chat dating to May 2019 in which the account "magnificentlittlesecrets" wrote, "This is probably my 7th tumblr in the last 3 years. Because sometimes I feel so guilty about it, and I just delete everything. But I keep coming back." *See* ECF No. 171 at 8. As the prosecution correctly observes, this statement not only

corroborates Bennett's alleged admission about deleting illegal material but also helps explain why investigators did not find forensic evidence of Bennett's illegal activity on any of his devices other than the external hard drive. *See id.* Finally, the Government notes that the account "magnificentlittlesecrets" was shut down by Tumblr in May 2019, after the company sent its cyber tip to NCMEC about the presence of CSAM. The search of Bennett's residence was not executed until June 2020, giving Bennett more than a year to dispose of possible sources of child sex abuse content.

In sum, the corroborative evidence proffered by the Government sufficiently supports Bennett's alleged admission about his ongoing involvement with child pornography, dating back to 2011, such that a jury may infer them to be true.

Bennett counters by pointing to numerous factors which, he claims, undermine the trustworthiness of his alleged admissions. He notes that there is no audio or video recording of the interview in which he supposedly confessed to unlawful conduct. Further, there is no indication he was specifically asked whether his behavior was continuous or whether there were gaps in his alleged involvement with child pornography. Additionally, there appears to be no direct connection between the external hard drive and the implicated Tumblr account, either temporally or in terms of content. But not withstanding these deficits, the admissions allegedly made by Bennett are sufficiently corroborated to satisfy the *Opper* trustworthiness standard. The issues highlighted by Bennett ultimately bear on the weight, rather than the admissibility, of the Government's evidence. The Government may therefore introduce Bennett's alleged admissions as evidence of a continuing course of criminal conduct. Of course, the jury will be under no

obligation to accept the Government's evidence as credible, but the critical point is that these disputes are matters to be weighed and decided by the trier of fact at trial.[4]

Having found that the Government appropriately charged a continuing course of criminal conduct at Counts 1 and 2 of the superseding indictment, the Court concludes that the concerns associated with duplicitous charges are not implicated here. In light of the Government's representations about its intended trial evidence, Bennett has adequate notice of the crimes charged. The nature of the Government's proof makes it unlikely that a jury would find Bennett guilty of possessing or receiving the CSAM on the external hard drive but then find him not

---

[4] Bennett cites to various rulings wherein, he claims, there existed a specific factual predicate for the alleged continuing scheme – a situation he insists does not pertain here. *See, e.g., United States v. Shorter*, 809 F.2d 54, 56 (D.C. Cir. 1987) (indictment properly alleged a continuous course of conduct of tax evasion where the Internal Revenue Service had obtained at least nine civil tax judgments against the defendant over a twelve-year period), *abrogated on other grounds by Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *United States v. Davis*, 471 F.3d 783, 791 (7th Cir. 2006) (indictment alleged an ongoing and continuous course of conduct of health care fraud where it alleged that the defendant "used three different methods [to commit the alleged fraud], that were repeated on numerous (likely daily) occasions over several years"); *United States v. Cipollone*, 951 F.2d 1057 (9th Cir. 1991) (offense behavior was not continuous within the meaning of U.S.S.G. §3D1.2(d) and the district court therefore properly refused to group two counts for sentencing purposes where, under the child pornography statute, "'each separate use of the mail to transport or ship child pornography should constitute a separate crime because it is the act of either transporting or shipping that is the central focus of this statute'") (quoting *United States v. Gallardo*, 915 F.2d 149, 151 (5th Cir.1990)); *United States v. Thornton*, NO. CR 21-878-KG, 2021 WL 5578902, at *3-4 (D.N.M Nov. 29, 2021) (finding that allegations in the indictment sufficiently alleged a violation of cyberstalking statute, which prohibits engaging "in a course of conduct" involving the use of "the mail" or "electronic communication" with the intent to "kill, injure, harass, [or] intimidate."; court noting that "course of conduct" is statutorily defined as "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose") (quoting 18 U.S.C. §§ 2261A(2) and 2266).

Here again, the Court finds nothing in the reasoning of these decisions that invalidates the Government's charging decision in this case.

guilty of possessing or receiving the CSAM located in the "magnificentlittlesecrets" Tumblr account (or vice versa). Thus, any concerns about a lack of juror unanimity, general verdicts, or double jeopardy are minimal in this case. Moreover, any concerns about fair sentencing are allayed by the fact that Bennett is facing only one charge each of receiving and possessing CSAM rather than multiple charges of receiving and possessing such material. Thus, the Government's charging decision has actually reduced the extent of Bennett's potential criminal liability. *See Root*, 585 F.3d at 155 (noting that "duplicity may actually inure to a defendant's benefit by limiting the maximum penalties he might face if he were charged and convicted on separate counts for what amounts to a single scheme").

Finally, even where a defendant's Sixth Amendment right to a unanimous jury verdict is jeopardized by a duplicitous indictment, "a court can cure the indictment by issuing a limiting instruction requiring the jury to unanimously find the defendant guilty of at least one distinct act. *United States v. Steiner*, 847 F.3d 103, 114-15 (3d Cir. 2017) (citing authority). To the extent any reasonable concerns remain about potential prejudice to Bennett because of the manner in which the Government has charged the offenses in Counts 1 and 2, the Court will consider the propriety of special instructions and/or interrogatories to the jury. Presently, however, the Court will deny Bennett's motion to either dismiss Counts 1 and 2 or compel the Government to choose between the offenses encompassed in the superseding indictment.

### B. *Defendant's Motion to Sever Counts in the Superseding Indictment (ECF No. 152)*

In his related motion filed at ECF No. 152, Bennett requests that the Court sever any count involving evidence from the external hard drive from those involving online content from the implicated Tumblr account. Count 1 of the superseding indictment (receipt of CSAM)

16

involves both types of evidence, as does Count 2 (possession of CSAM). Thus, Bennett is essentially asking that the Court sever Counts 1 into multiple charges and do the same for Count 2. The Government would then be required either to present these separate charges to the grand jury under separate indictments or elect which offense it intends to prosecute using the current indictment. Here again, Bennett contends that severance is warranted because the superseding indictment "alleges two separate and distinct groups of offenses that occurred as much as 9 years apart[.]" ECF No. 152 at 1.

Bennett's motion to sever implicates Rules 8 and 14 of the Federal Rules of Criminal Procedure, which are "designed to promote economy and efficiency and to avoid multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendant[ ] to a fair trial." *Bruton v. United States*, 391 U.S. 123, 131 n.6 (1968). Pursuant to Rule 8(a), an indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). "Joinder of charges is the rule rather than the exception and Rule 8 is construed liberally in favor of initial joinder." *United States v. Colon*, No. 3:24-CR-194, 2024 WL 4554788, at *2 (M.D. Pa. Oct. 23, 2024) (internal quotation marks and citation omitted).

Nevertheless, properly joined charges may be severed pursuant to Federal Rule of Criminal Procedure 14 if the joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a). A request for severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right" of a defendant, "or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *United States v. Silveus*, 542 F.3d 993, 1005-06 (3d Cir. 2008). A defendant who claims

17

improper joinder under Rule 14 must demonstrate clear and substantial prejudice, *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981), and bears a "heavy burden" of showing that severance or other relief is warranted. *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005). Mere allegations of prejudicial joinder are insufficient to warrant severance. *Urban*, 404 F.3d at 775. Moreover, a severance of charges may be inappropriate if limiting instructions from the court can adequately manage the possibility that a jury might misuse evidence. *Colon*, 2024 WL 4554788, at *2; *see Zafiro*, 506 U.S. at 539 ("When the risk of prejudice is high, a district court is more likely to determine that separate trials are necessary, but ... less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice."). A motion for relief under Rule 14 rests in the sound discretion of the district court. *Reicherter*, 647 F.2d at 400.

Here, Bennett is requesting a severance not of individual charges or individual defendants, but of episodic conduct that the Government claims was part of an ongoing course of criminal activity. His request is predicated on the untenable position that no continuing course of unlawful conduct can be established in this case. For the reasons previously discussed, this Court has rejected that assertion. On the contrary, the Court has determined that the Government could appropriately allege an ongoing course of criminal conduct based on its evidentiary proffer, and it will be for the jury to decide whether the Government's allegations are proven beyond a reasonable doubt.

Under Rule 8(a), joined offenses need not be identical, and it suffices if they are "somewhat alike" or "otherwise have a sufficient logical connection and can be tried using the same evidence." *United States v. Heilman*, 377 F. App'x 157, 202 (3d Cir. 2010). Here, the component offenses in Counts 1 and 2 are of similar character inasmuch as they all involve the receipt or possession of CSAM, and the Government has alleged that they constitute parts of a

18

common scheme or plan. *United States v. Wise*, 134 F.4th 745, 748 (3d Cir. 2025) (holding that charges of possessing child pornography, attempting to entice a minor, and attempting to transfer obscene matter to a minor were properly joined, as they "all involve[d] the sexual exploitation of minors" and were therefore "of the same or similar character"). The fact that there was a temporal gap between the conduct involving the external hard drive and the conduct involving the implicated Tumblr account is not dispositive. *See United States v. Lingala,* 91 F. 4th 685, 693 (3d Cir. 2024) ("Rule 8(a) does not expressly or impliedly require that offenses be committed within a limited timeframe."). Consequently, the joining of the component offenses in Counts 1 and 2 was appropriate.

Notwithstanding this, Bennett insists that severance is warranted because he will be unfairly prejudiced if he is compelled to stand trial on all three counts as they are currently charged. His arguments on this point are unpersuasive.

Bennett first posits that the evidence related to the external hard drive – if credited by the jury and associated with him – would necessarily color the jurors' perception of him relative to the offenses involving the "magnificentlittlesecrets" Tumblr account. This is particularly true, Bennett argues, because the images the Government intends to introduce from the hard drive involve depictions of minors engaged in sexually explicit conduct – content that he describes as "highly sensitive and emotionally charged." ECF No. 152 at 6. He insists it is unfair to expect the jury to compartmentalize such evidence and not allow it to spill over to the counts relating to the Tumblr account.

Bennett's assertions of a possible spillover effect are speculative and fail to establish that "'clear and substantial prejudice" will occur in the absence of a severance. *Reicherter*, 647 F.2d at 400; *see United States v. Burton*, No. CR 23-154-1, 2025 WL 1558471, at *5 (E.D. Pa. June 2,

2025) (defendant's assertion that the jury would be "unable to compartmentalize the evidence as to each defendant," and that joinder with other co-defendants would cause "spillover prejudice" were "speculative and insufficient to warrant severance of the Defendants"). In fact, because the images and offenses at issue are "all disturbing in the same way, . . . there [is] little risk of spillover prejudice." *Wise*, 134 F.4th at 748 (affirming the district court's decision not to sever charges of possessing child pornography, attempting to entice a minor, and attempting to transfer obscene matter to a minor). As the facts and charges in this case are straightforward, the Court is satisfied that cautionary instructions, if needed, will sufficiently cure any potential prejudice that might otherwise result from the jury hearing about the two different sources of CSAM. *See United States v. Walker*, 657 F.3d 160, 170 (3d Cir. 2011) ("Where additional charges against a single defendant are relatively straightforward and discrete, we have not doubt[ed] that the jury reasonably could have been expected to compartmentalize the evidence ... and actually did so.") (internal quotation marks and citation omitted; ellipsis and alteration in the original). Accordingly, Bennett has not shown that the joinder of component offenses in Counts 1 and 2 will "prevent the jury from making a reliable judgment about guilt or innocence." *Urban*, 404 F.3d at 775.

As an alternative rationale for severance, Bennett maintains that evidence involving the external hard drive would not be admissible in a trial involving the online Tumblr account. According to Bennett, in such a scenario, the introduction of images taken from the external hard drive would – if the jury believed that Bennett knowingly received or possessed them -- amount to an impermissible use of character evidence. *See* Fed. R. Evid. 404(b) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

20

While the Court need not presently make any definitive ruling on this point, it suffices to say that Bennett's position on this matter is by no means a legal certainty.  Rule 404(b) permits the use of prior bad acts evidence for purposes other than proving bad character; thus, such evidence may be used to prove a person's motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  Because a defendant's possession or receipt of child sex abuse material must be "knowing," it falls upon the Government to prove that the receipt or possession was not accidental or a mere mistake.  The Government makes at least a colorable argument that evidence relating to the external hard drive would be admissible to show that Bennett did not accidentally or mistakenly possess CSAM found in the implicated Tumblr account.  It might also be admissible to prove that Bennett had a motive – namely, an interest in young females – to acquire similar CSAM and/or to distribute such material through the "magnificentlittlesecrets" Tumblr account.  And any prejudice that might otherwise result from this type of 404(b) evidence might well be curable through special instructions to the jury.  Thus, without arriving at any definitive conclusions on the matter, the Court does not rule out the possibility that evidence pertaining to the hard drive might be admissible in a trial involving the Tumblr account, and vice versa.  "In cases where evidence of each of the joined offenses would be admissible in a separate trial for the other, concerns about cumulation of evidence and inference of a criminal disposition are largely absent." *United States v. McNeill*, Criminal No. 06-373, 2007 WL 2234516 (W.D. Pa. Aug. 2, 2007).  Accordingly, Bennett's Rule 404(b) argument fails to establish grounds for a severance of charges.

Bennett next argues that trying the component offenses together will violate his Fifth Amendment rights because he may be deterred from testifying about certain aspects of the alleged conduct if he wishes to remain silent as other aspects of alleged conduct.  *See* ECF No.

152 at 7 (citing *United States v. Jordan*, 112 F.3d 14, 17 (1st Cir. 1997) (reversing district court's refusal to sever counts; finding defendant was prejudiced by wanting to testify as to his subjective belief to defend against a fraud count and therefore subjecting himself to cross-examination on tax evasion counts); *United States v. Archer*, 843 F.2d 1019, 1022 (7th Cir. 1988) ("[S]ometimes circumstances can coerce a defendant into testifying on a count upon which he wishes to remain silent [and in] such cases, severance may be necessary.") (citation omitted)). Bennett posits that, to the extent he intends to testify at trial regarding one set of offenses, the two sets of offenses must be severed or he will be coerced into testifying about all charges.

Given the current uncertainty about whether, and to what end, Bennett will testify at trial, the Court will not grant his request for a severance on Fifth Amendment grounds. *See United States v. Gorecki*, 813 F.2d 40, 43 (3d Cir. 1987) ("Defendant's bare allegation that the joinder prevented his testimony on the weapons charge, without a specific showing as to what that testimony may have been, fails to meet the stringent requirements for a Rule 14 showing of prejudice."); *Reicherter*, 647 F.2d at 401 (where a defendant wants to show that he has "important testimony to give concerning one count," and "a strong need to refrain from testifying on the other," it is "essential that the defendant present enough information regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other to satisfy the court that the claim of prejudice is genuine"); *United States v. Weber*, 437 F.2d 327, 334 (3d Cir.1970) (rejecting the defendant's claim that joinder prevented him from testifying as to some, but not all counts, in violation of his Fifth Amendment rights); *United States v. Wisher*, No. CR 17-45-1-LPS, 2018 WL 6313186, at *4 (D. Del. Dec. 3, 2018) (court denying defendants' motion for severance and noting it was "unpersuaded by Defendants' bare assertions that each Defendant may wish to testify at trial"); *Pitts v. Redman*, 776 F. Supp. 907,

22

922 (D. Del. 1991) (rejecting petitioner's allegation in federal habeas corpus proceedings that the trial court's refusal to sever charges prevented him from testifying about some, but not all, charges; petitioner's unsupported allegations of prejudice failed to "present enough information—regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other—to satisfy the court that the claim of prejudice is genuine") (quoting *Reicherter*, 647 F.2d at 401), *aff'd*, 970 F.2d 899 (3d Cir. 1992). Here, Bennett simply has not provided sufficient information regarding his possible future testimony to satisfy "the stringent requirements for a Rule 14 showing of prejudice." *Gorecki*, 813 F.2d at 43.

Finally, Bennett insists that the interests of judicial economy and efficiency will not be served by a joint trial here, because the counts involve different witnesses, time periods, and evidence. He envisions the need for extensive *voir dire*, multiple limiting instructions, and other judicial safeguards in order to ensure that the jury appropriately considers each count and each time period in question.

Again, Bennett's argument in support of a severance is not persuasive. All of the charges in this case arise from the same investigation. Accordingly, all three charges involve common witnesses and overlapping evidence. A single trial will minimize the burden on the witnesses, increase efficiency, and conserve judicial resources. Accordingly, the interests in promoting judicial economy outweigh any possible or speculative prejudice that may arise from a single trial. Finally, the charges in this case are relatively straightforward, both temporally and substantively, and there is no reason to think that any concerns about confusion cannot be handled with appropriate instructions and/or interrogatories to the jury.

Based on the foregoing considerations, the Court finds that Bennett has not satisfied his burden of establishing grounds for a severance of the component offenses. Accordingly, his motion at ECF Number 152 will be denied.

### C. *Defendant's Motion to Dismiss the Superseding Indictment (ECF No. 153)*

Finally, Bennett has filed a motion to dismiss the superseding indictment on the basis of prosecutorial misconduct. First, he asserts that the chronology of this case merits a presumption of vindictive prosecution. Alternatively, he argues that the Government's delay in bringing the instant charges and/or failure to fully comply with its *Brady* obligations violated his Fifth Amendment due process rights. Bennett's motion to dismiss will be denied, as none of the bases articulated merits a dismissal of the pending criminal charges.

### 1. Vindictive Prosecution

The Government has broad prosecutorial discretion, but it may not prosecute individuals in retaliation for the individual exercising a protected statutory or constitutional right, such as going to trial. *See United States v. Picca.,* No. 4:22-CR-0361, 2025 WL 3766106, at *4 (M.D. Pa. Dec. 30, 2025); *United States v. Biden*, 729 F. Supp. 3d 410, 416-17 (D. Del. 2024). A defendant alleging vindictive prosecution bears the burden of proof. *Id.* "In general, 'there are two ways in which a defendant can prove a claim of vindictiveness.'" *United States v. Stafford*, No. 19-3833, 2021 WL 6061764, at *6 (3d Cir. Dec. 20, 2021) (quoting *United States v. Paramo*, 998 F.2d 1212, 1220 (3d Cir. 1993). "First, he may 'use evidence of a prosecutor's retaliatory motive to prove actual vindictiveness.'" *Id.* (quoting *Paramo*, 998 F.2d at 1220). "Second, 'in certain circumstances, a defendant may show facts sufficient [for] a presumption of vindictiveness.'" *Id.* (quoting *Paramo*, 998 F.2d at 1220).

24

Here, Bennett does not allege actual vindictiveness on the part of the prosecution. Instead, he contends that the procedural history of this case gives rise to a presumption of vindictiveness. He notes that the Government's superseding indictment, which added a charge of distribution of CSAM, was not filed until July 2025, some five years after the Government conducted the search of Bennett's home and seized the evidence that gave rise to this proceeding. Bennett claims the superseding indictment was not filed until after he decided to go to trial and the Court set a trial date of September 15, 2025. Based on these facts, he asks that the Court recognize a presumption of vindictiveness, hold an evidentiary hearing, and require the Government to rebut the presumption.

Bennett's arguments lack merit. In this judicial circuit, "a pretrial decision to pursue enhanced charges does not automatically trigger a presumption of vindictiveness." *United States v. Ponder*, 738 F. App'x 114, 116 (3d Cir. 2018) (quoting *United States v. Goodwin*, 457 U.S. 368, 381 (1982)). Rather, a presumption of vindictive prosecution typically arises in the context of post-trial, rather than pre-trial, conduct. *See, e.g., United States v. Sellers*, 501 F. App'x 194, 197 (3d Cir. 2012) (noting that a presumption of prosecutorial vindictiveness does not generally apply to pre-trial prosecutorial conduct); *accord United States v. Villa*, 70 F. 4th 704, 711 (4th Cir. 2023) ("The presumption of vindictiveness will rarely, if ever, be applied to prosecutors' pretrial decisions.") (internal quotation marks and citation omitted); *United States v. Ray*, 899 F.3d 852, 860 (10th Cir. 2018) ("Critically, courts tend to find presumptive vindictiveness only in post-trial situations[.]"); *United States v. Rosse*, 716 F. App'x 453, 462 (6th Cir. 2017) ("Invoking a presumption of vindictiveness in a pretrial setting, though possible, . . . is necessarily difficult.") (internal citation omitted).

Here, no presumption is warranted based on the factors cited by Bennett. First, the record does not demonstrate that Bennett had unambiguously demonstrated a choice to proceed to trial prior to the filing of the superseding indictment. On the contrary, the Government has produced evidence that current defense counsel was still discussing the possibility of plea negotiations in July 2025, shortly before the superseding indictment was returned. Nor did the Court's orders setting the September 2025 trial date and extending the deadline for pretrial motions definitively foreclose the possibility of a plea agreement. In any event, however, a presumption of vindictiveness does not arise from the mere fact that a prosecutor has pursued enhanced charges in the wake of failed plea negotiations. *See, e.g., Picca*, 2025 WL 3766106, at *5 (no presumption of vindictive prosecution arose where additional charges were legitimately supportable based on facts available at the time of the initial indictment, the Government threatened to add the charges if a guilty plea was not reached, the defendant refused to admit guilt, and new charges were filed) (following *Bordenkircher v. Hayes*, 434 U.S. 357, 358-59 (1978)).

In addition, the Government represents that, while it was still in a pretrial posture, new information emerged which suggested that Tumblr had additional relevant information bearing on this case. According to the Government, this led agents to secure a new search warrant, through which they obtained additional chats that allegedly showed Bennett sharing child pornography images with others. Although some of the images had previously been seized by the Government, evidence of the alleged distribution had not. Thus, the Government asserts that the newly added distribution charge was based partly on the new information and concerned conduct that differed from the previously charged receipt and possession. The Court accepts the

26

Government's representations and finds that no presumption of prosecutorial vindictiveness is supported by the record in this case.

> 2. Alleged Due Process Violations

Bennett next argues that the superseding indictment should be dismissed because the Government's pre-indictment delay and failure to timely comply with its *Brady* obligations violated his Fifth Amendment due process rights. Again, Bennett points to the timing of relevant events, arguing that the Government's delay in bringing the superseding indictment -- based on evidence that was always in its possession – establishes a prima facie showing of prejudice. He notes that the alleged criminal conduct dates as far back as 2010 and posits that evidence pertaining to this time frame, such as internet service records, are likely no longer available.

Bennett further argues that this prejudice is exacerbated by the Government's failure to timely comply with its *Brady* obligations. Here, he references information received from D.T. pertaining to Bennett's use (or possible non-use) of Tumblr and pertaining to a third party who reportedly lived at Bennett's residence at times relevant to the superseding indictment. Bennett claims he is prejudiced by the Government's delay in that D.T.'s recollection concerning past internet use has likely deteriorated, and any relevant information the roommate might have possessed has likely been lost due to the passage of time.

A defendant may challenge his prosecution on due process grounds, based on the delay between the alleged crime and the indictment. *United States v. Beckett*, 208 F.3d 140, 150-51 (3d Cir. 2000); *Picca, supra*, at *2. To prevail on this type of challenge, the defendant must show both that (1) the preindictment delay actually prejudiced his defense; and (2) the government deliberately delayed bringing the indictment in order to obtain an improper tactical advantage or to harass him. *Id.*

"Proof of prejudice is generally a necessary but not sufficient element of a due process claim ... the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Picca, supra,* at *3 (quoting *United States v. Lovasco,* 431 U.S. 783, 790 (1977)). "Examples of prejudice caused by delay include the loss of witnesses or evidence, or the fading of memories." *Id.* (citing *United States v. Ismaili,* 828 F.2d 153, 168 (3d Cir. 1987)). The defendant must demonstrate "concrete" examples of prejudice, and the "mere possibility of prejudice inherent in any extended delay, or the mere possibility that a witness might become inaccessible and evidence be lost, is not sufficient.'" *Id.* (quoting Ismaili, 828 F.2d at 168). Moreover, investigatory delay is different from tactical delay, and unless a defendant can show that the prosecution "'delayed the indictment deliberately to harass him or to gain some improper advantage,' a defendant's undue delay claim will fail." *Id.* (quoting *United States v. Beckett,* 208 F.3d 140, 151 (3d Cir. 2000)).

Here, Bennett has failed to satisfy either prong of his evidentiary burden. First, he has not shown any concrete prejudice as a result of the preindictment delay, relying instead on speculation that witness memory may have faded or relevant evidence may have been lost. Second, he has proffered no evidence to show that the Government intentionally delayed bringing the distribution charge for the purposes of gaining an advantage over him, rather than as a result of its continuing investigation. Consequently, there is no basis for dismissing the instant charges on the grounds of preindictment delay.

Bennett's assertion that his due process rights were violated by the Government's failure to fulfill its *Brady* obligations is similarly unpersuasive. In *Brady v. Maryland,* 373 U.S. 83 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to

28

punishment...." *Id.* at 87. The Government's disclosure obligation includes both evidence that is directly exculpatory and that which may be used to impeach a crucial prosecution witness. *See United States v. Bagley*, 473 U.S. 667, 676 (1985); *Giglio v. United States*, 405 U.S. 150, 154 (1972). "The purpose of *Brady* is not to require the prosecution to disclose all possibly favorable evidence to the defense but to make certain that the defendant will not be denied access to evidence which would ensure him a fair trial." *Wilson v. Beard*, 589 F.3d 651, 659 (3d Cir. 2009).

To establish a *Brady* violation, a defendant must demonstrate that: "(1) the government withheld evidence, either willfully or inadvertently; (2) the evidence was favorable, either because it was exculpatory or of impeachment value; and (3) the withheld evidence was material." *United States v. Walker*, 657 F.3d 160, 185 (3d Cir. 2011) (citation and internal quotation marks omitted). Notably, "*Brady* is not implicated if there is no prejudice to the defendant." *United States v. Moreno*, 727 F.3d 255, 262 (3d Cir. 2013); *see Dennis v. Sec'y, Pa. Dep't of Corrs.*, 834 F.3d 263, 285 (3d Cir. 2016) (noting that the nondisclosed evidence "must have been material such that prejudice resulted from its suppression"); *see also United States v. Thomas,* No. 2015-0039, 2020 WL 3895770, at *7 (D.V.I. July 10, 2020) ("There can be no violation of *Brady* without a finding of prejudice.") (citation omitted). Accordingly, "[w]here the government makes *Brady* evidence available during the course of a trial in such a way that a defendant is able effectively to use it, due process is not violated and *Brady* is not contravened." *Moreno*, 727 F.3d at 262.

The defendant bears the burden of establishing a *Brady* violation. *Maynard v. Gov't of the Virgin Islands*, 392 F. App'x 105, 119 (3d Cir. 2010) (citing *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir. 2005)). The Government contends that Bennett cannot meet his burden

because he cannot demonstrate either materiality or prejudice resulting from the prosecution's conduct.

Relevantly, the FBI's 302 report concerning D.T. reflects that, on June 3, 2020, D.T. told the interviewing agents he "does not think that Bennett uses Tumblr, but he doesn't know for certain." This fact was disclosed by the Government in an email dated August 15, 2025. Upon motion by defense counsel, the Court on August 25, 2025 ordered the Government to produce the entire 302 report of D.T.'s interview, as well as any rough notes or other material pertaining to that interview. The Government did so, and the unredacted 302 report then revealed to defense counsel that a third party had lived at D.T.'s home during at least part of the alleged offense period. The Government contends that there is nothing necessarily exculpatory about this information, as there is no evidence to suggest that this former housemate has anything to do with this case. Regardless, however, the Government argues that Bennett has not been prejudiced because the information was provided to him over four months in advance of the scheduled trial date, and Bennett has not established a "reasonable probability" that earlier disclosure would have affected the outcome of these proceedings. *See Dennis*, 834 F.3d at 285 (noting that the "'touchstone'" of materiality is a "'reasonable probability of a different result'") (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

The Government's arguments in this regard are well-taken. "'The obligation to disclose ... *Brady* material is not based on any general constitutional right to discovery in criminal cases, but rather on a defendant's due process right to a fair trial.'" *Thompson v. City of Williamsport*, No. 4:22-CV-01159, 2024 WL 1747645, at *7 (M.D. Pa. Apr. 23, 2024) (quoting *United States v. Bashir*, 738 F. App'x 743, 748 (3d Cir. 2018)). Thus, "'[n]o denial of due process occurs if *Brady* material is disclosed to [defendant] in time for its effective use at trial.'" *Id.* (quoting

*United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983) (alteration in the original). Assuming that the information in question was subject to the Government's disclosure obligations under *Brady*, the Court finds that it was released in a timely enough fashion to ensure its effective use at trial. Moreover, defense counsel confirmed during oral argument on November 19, 2025, that there were no other outstanding discovery issues to be addressed in this case. Accordingly, the Court finds that the Government's disclosure obligations have now been fulfilled and any potential *Brady* violation has been cured. Bennett has not established a reasonable probability that earlier disclosure of the information would affect the outcome of this proceeding.

## III.   Conclusion

Based upon the foregoing reasons, the motions filed by Bennett at ECF Numbers 151, 152, and 153 will be denied. An appropriate order follows.

/s/ Stephanie L. Haines
STEPHANIE L. HAINES
UNITED STATES DISTRICT JUDGE

DATED:  January 5, 2026

31