## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | **Case No. 1:21-cr-16** |
| v. | ) | |
| | ) | |
| MICHAEL BENNETT | ) | |

### MEMORANDUM OPINION RE: MOTIONS FILED AT
### ECF NOS. 97, 180, 181, 182, 186, 187, 196, and 213

**Susan Paradise Baxter, United States District Judge**

Pending before the Court in the above captioned case are various pretrial motions, including numerous motions *in limine*. The Court addresses these motions below.

### *Applicable Legal Standards*

A motion *in limine* allows the court to rule in advance of trial on the relevance and admissibility of certain evidence so as to narrow the evidentiary issues and eliminate unnecessary trial interruptions. *See Bradley v. Pittsburgh Bd. Of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990); *United States v. Tartaglione*, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017). Evidence should be excluded on a motion *in limine* only when it is clearly inadmissible on all potential grounds. *Tartaglione*, 228 F. Supp. 3d at 406 (citing *Leonard v. Stemtech Health Sciences, Inc.*, 981 F. Supp. 2d 273, 276 (D. Del. 2013)). The trial court may reserve judgment on a motion *in limine* until trial "so as to place the motion in the appropriate factual context." *Tartaglione*, 228 F. Supp. 3d at 406 (citing *Diehl v. Blaw–Knox*, No. 01-0770, 2002 WL 34371510, at *1 (M.D. Pa. July 15, 2002)). A trial court's ruling on a motion *in limine* is also "subject to change when the case unfolds, particularly if actual testimony differs from what was contained in the movant's

1

proffer." *Id.* (quoting *Luce v. United States*, 469 U.S. 38, 41 (1984)); *see also United States v. Sater*, No. 3:19-CR-0113, 2020 WL 6384411, at *1 (M.D. Pa. Oct. 30, 2020).

### *The Government's Motion in Limine at ECF No. 97*

The Government has filed at ECF No. 97 a motion *in limine* to preclude the defense from referring to possible penalties or sentences in the presence of the jury. This restriction would prohibit defense counsel from making any direct or indirect reference to the possible sentencing range or the statutory minimum or maximum sentences that might apply in this case in the event the Defendant is convicted.

No response or opposition has been filed to this motion, and the Court finds that it is well-taken. It is firmly established that, when the jury has no sentencing function, as is the case here, it "should reach its verdict without regard to what sentence might be imposed." *Rogers v. United States*, 422 U.S. 35, 40 (1975). In *United States v. Shannon,* the Supreme Court explained:

> The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor in our legal system between judge and jury. The jury's function is to find the facts and to decide whether, on those facts, the defendant is guilty of the crime charged. The judge, by contrast, imposes sentence on the defendant after the jury has arrived at a guilty verdict. Information regarding the consequences of a verdict is therefore irrelevant to the jury's task. Moreover, providing jurors sentencing information invites them to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion.

512 U.S. 573, 579 (1994); *see also United States v. Fisher*, 10 F.3d 115, 121 ("In the federal courts, the role of the jury in a non-capital case is to determine whether the defendant is guilty or not guilty based on the evidence and the applicable rules of law. The jury is supposed to perform this role without being influenced in any way by what the consequences of its verdict might

be."). This principle is reflected in the Model Jury Instructions for this judicial circuit. *See* Third Circuit Model Criminal Jury Instruction 3.16 ("If you decide that the government has proved (name) guilty, then it will be my responsibility to decide what the appropriate punishment should be. You should never consider the possible punishment in reaching your verdict.").

Accordingly, the Court will grant the Government's motion at ECF No. 97, and both parties will be precluded from mentioning during the trial, either directly or indirectly, the statutory minimum or maximum, possible sentences, or possible sentencing ranges that may apply in this case. *See, e.g., United States v. Johnson*, No. CR 3:21-143, 2022 WL 2835955, at *2 (M.D. Pa. July 20, 2022) (granting government's motion *in limine* and holding that "no party shall introduce evidence, or reference, or elicit testimony regarding potential penalties or mandatory sentences the defendants will be facing if either defendant is convicted"); *United States v. King*, No. 2:21-CR-184-CCW, 2022 WL 2343316, at *3 (W.D. Pa. June 29, 2022) (granting Government's motion *in limine* and ruling that "the defense is precluded from referring, either directly or indirectly, to the potential penalties, the statutory minimum or maximum, or possible sentencing range upon conviction in the presence of the jury").

### *The Defendant's Motion in Limine at ECF No. 180*

The Defendant has filed at ECF No. 180 a motion *in limine* to prohibit use of the phrase "child sex abuse material" or "CSAM" before the jury. Defendant argues that these terms do not appear in the offense statute, 18 U.S.C. §2252, and they impermissibly imply the existence of "sexual abuse" in the depictions at issue. Sexual abuse, Defendant posits, sweeps more broadly than the statutory language, is more egregious than the crime charged, and is not an element of the crime. Thus, Defendant argues, use of the terms "child sex abuse material" or "CSAM"

creates the risk of unfair prejudice, confusion, and undermining the presumption of innocence. Defendant requests that this Court instead require all parties to utilize more neutral and precise statutory language, such as references to the depiction of minor engaging in "sexually explicit conduct."

The prosecution argues that "child sex abuse material" or "CSAM" properly describes the material at issue, because "exploitation" is synonymous with "abuse," and the mere taking of the images is a form of exploitation or abuse, even if the child is not being assaulted. The prosecution further argues that the jury should be allowed to view at least some of the material at issue, which will allow it to judge the content for itself. The prosecution insists that these measures, in conjunction with appropriate jury instructions, will eliminate any risk of confusion and preserve the presumption of innocence.

This Court is unaware of any case law from this circuit or elsewhere that finds "CSAM" or "child sex abuse material" to be an inaccurate or inappropriate description of the type of visual material referenced in 18 U.S.C. §2252. On the contrary, federal courts commonly use these terms as a shorthand for such prohibited material. *See, e.g., United States v. Jordan,* Criminal Case No. 3:23-CR-0205-B, 2025 WL 1908397 (N.D. Tex. July 10, 2025) ("The Government charges Jordan with possession and receipt of child sexual abuse materials ('CSAM'), in violation of 18 U.S.C. § 2252."); *In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig.*, 777 F. Supp. 3d 1016, 1029 (N.D. Cal. 2025) ("Plaintiffs bring claims against defendants Meta and Snap alleging violations of federal statutes prohibiting the knowing distribution (18 U.S.C. § 2252) or possession (18 U.S.C. § 2252A) of CSAM."); *United States v. Kneubuhler*, No. 123CR00047MHCJEM, 2023 WL 5488475, at *1 (N.D. Ga. Aug. 3, 2023) ("Section 2252(a)(2) prohibits a person from knowingly receiving, distributing, or reproducing for

distribution any visual depiction of a minor engaging in sexually explicit conduct (referred to as child sexual abuse material or 'CSAM') using the mails or any means of interstate or foreign commerce."), *report and recommendation adopted*, No. 1:23-CR-0047-MHC-JEM, 2023 WL 5490120 (N.D. Ga. Aug. 24, 2023).

Moreover, the U.S. Court of Appeals for the Third Circuit has suggested in dictum that these terms are an appropriate description. *See United States v. Long*, 92 F.4th 481, 483 n.1 (3d Cir. 2024) (court referring to defendant's alleged possession of "child pornography" in violation of 18 U.S.C. §2252(a)(4)(B) and 2252(b)(2) but noting in dictum that "'child sex abuse material' or CSAM is a more accurate label than 'child pornography,' because the material inherently documents child exploitation and sexual abuse"). Accordingly, the Court sees nothing inherently unfair or inaccurate in using the terms "CSAM" or "child sex abuse material" when referring to the images at issue in this case.

At the same time, however, the United States has represented that it "has no intention of peppering its presentation of the evidence in this case with the use of the phrase 'child sexual abuse material' or 'CSAM.'" ECF No. 189 at 4. The Government further represents that it is willing to use the alternative phrase "child sexual exploitation material," consistent with Section 2252's title: "Certain activities relating to material involving the sexual exploitation of minors."

The Court is inclined to agree with the prosecution's view that there will likely not be much reason for it to use the terms "CSAM" or "child sexual abuse material," especially if the jury is permitted to view some of the material at issue, which would allow them to judge the content of the images for themselves. And to the extent there is limited or inadvertent reference to "CSAM" in the jury's presence, the Court will consider giving an appropriate cautionary instruction.

5

For these reasons, the Defendant's motion at ECF No. 180 will be denied, as the Court does not find anything technically wrong or inappropriate with regard to the terms "CSAM" or "child sex abuse material." However, the Court will encourage the Government to avoid any unnecessary complications in this regard by referring to, *e.g.*, the "images in question," or by utilizing, when possible, more neutral terms such as "sexual exploitation material," depictions of "sexually explicit conduct," or comparable language.

*The Defendant's Motion in Limine at ECF Nos. 181 and 182*

The United States has represented that, as part of its case-in-chief, it will present testimony from forensic examiner Fernando Hernandez. According to the prosecution's July 1, 2024 disclosure letter, Mr. Hernandez is expected to testify as an expert witness in the field of electronic-digital data acquisition and forensic examination. *See* ECF No. 181-1.

At ECF Numbers 181 and 182, Defendant has filed motions to limit or bar Mr. Hernandez's testimony pursuant to Federal Rule of Criminal Procedure 16 and/or Federal Rule of Evidence 702. We address each motion in turn.

A. <u>Defendant's Rule 16 Challenge at ECF No. 181</u>

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G), the Government must disclose, upon request by the defense, the following information for any expert witness the Government intends to call at trial, either during its case-in-chief or during rebuttal:

> • a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under (b)(1)(C);
>
> • the bases and reasons for them;

6

• the witness's qualifications, including a list of all publications authored in the previous 10 years; and

• a list of all other cases in which, during the previous 4 years, the witness has testified as an expert at trial or by deposition.

Here, only the first two bullet points are at issue. The Court must therefore consider whether the Government has made sufficient disclosures concerning Mr. Hernandez's opinions and the bases and reasons for those opinions.

Relevantly, the Government stated the following in its July 1, 2024 disclosure letter to defense counsel:

> Mr. Hernandez is expected to testify concerning his forensic examination of Michael Bennett's Western Digital 500GB My Passport external hard drive (storage media). He is expected to testify that he located the images and videos of child sexual abuse material forming the basis for the charges in the Indictment on Bennett's Western Digital 500GB My Passport external hard drive (storage media) (listed in the forfeiture section of the Indictment). This external hard drive is also identified as Item 1 in Mr. Hernandez's forensic report which has been previously provided in discovery. He is also expected to testify about the digital locations of the illegal material on the subject external hard drive. Mr. Hernandez is also expected to testify about the metadata he was able to locate for each of the illegal items of child sexual abuse material that form the basis for the Indictment. He may also testify about the location of other items of evidentiary value for the purpose of establishing that the external hard drive belonged to Mr. Bennett. Mr. Hernandez may also testify concerning the results of his forensic examination of the other digital devices listed in his forensic report.
>
> Mr. Hernandez is also expected to testify concerning his general knowledge of digital devices, including external hard drives, and how they work. He will also testify about how a forensic examination is performed on an external hard drive specifically and digital devices more generally. Mr. Hernandez's knowledge of the receipt and possession of child sexual abuse material via computers, digital devices, external hard drives and cellular phones will also be discussed. This represents the expected and anticipated presentation of expert witnesses on behalf of the government.

ECF No. 181-1.

The prosecution also provided Mr. Hernandez's report in discovery. According to Defendant, Mr. Hernandez made two key "findings": (i) 45 images and 3 videos that depicted adolescent children in the state of undress and/or engaging in sexually explicit activities were

found on the 500GB hard drive; and (ii) no such images or videos were found on the other devices examined. *See* ECF No. 181 at 2, ¶5.

Defendant contends that the Government's notice and related report fail to provide "a complete statement of all opinions" that the prosecution "will elicit from" Mr. Hernandez. Without more information, Defendant argues, it will be "impossible to determine what conclusions Mr. Hernandez has reached or what conclusions or opinions the [G]overnment intends to communicate to the jury other than his view that the 500GB hard drive contained the prohibited images and videos referenced in his report." ECF No. 181 at 4. Defendant also insists that the Government's disclosures fail to supply the "bases and reasons" for Mr. Hernandez's conclusions. Arguing that he is "unable to effectively prepare to meet Mr. Hernandez's proffered expert testimony," *id.*, Defendant urges the Court to bar Mr. Hernandez from testifying as an expert or, alternatively, limit his testimony to the four corners of his report. *Id.*

On the same day that Defendant filed the instant motion, the United States provided a supplemental disclosure in which it disclosed the following information:

> Mr. Hernandez is expected to testify that as a result of his forensic exam of Michael Bennett's Western Digital 500 GB My Passport external hard drive he located 45 images and 3 videos of child sexual abuse material on the external drive. He is expected to testify as to the locations of these items on the subject external drive consistent with the information that has already been provided to you.

> Mr. Hernandez is also expected to testify that he found items on the external hard drive linking Mr. Bennett to the hard drive, specifically a document authored by Mr. Bennett and a video in which Mr. Bennett is depicted giving a presentation. . . .

> Mr. Hernandez is also expected to testify that he was able to determine that Mr. Bennett's phone contains digital data indicating that he obtained the phone in October 2019.

> He is also expected to testify that Google Chromebooks don't typically store data, rather they are often referred to as "dump terminals" because they provide access to information stored in the user's cloud account and Chromebook's [sic] delete their data cache when the Chromebook is turned off. He is also expected to testify that not finding evidence on a

8

Chromebook is not unusual in his experience and in this case, he found almost no data saved on the subject Chromebook.

Mr. Hernandez will also testify consistent with his report in this case that he attempted to examine an iPhone seized from Mr. Bennett's residence but could not conduct an examination of the iPhone for the reasons stated in his report.

Mr. Hernandez is also expected to explain what an IP address is.

ECF No. 188-1.

During a telephonic conference held on January 27, 2026, the Court inquired whether the Government's supplemental disclosure letter resolved the concerns stated in Defendant's motion. Defense counsel stated indicated that it did not.

After reviewing the parties' respective filings, the Court now finds that the Government's disclosures regarding Mr. Hernandez are adequate. Relevantly, Rule 16(a)(1)(G) does not require "a verbatim recitation of the testimony the expert will give at trial." Fed. R. Crim. P. 16, Advisory Comm. Notes to the 2022 Amendment. Rather, the purpose of the disclosure requirements is "to facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." Fed. R. Crim. P. 16, Advisory Comm. Notes to the 2022 Amendment.

Here, that purpose has been fulfilled by virtue of the prosecution's two disclosure letters, especially the second letter which outlines in considerable detail the findings about which Mr. Hernandez will testify. As can be seen from the Court's recitation of those letters, much of Mr. Hernandez's testimony will relate to factual matters rather than matters of opinion. The Government has further satisfied its disclosure obligations by granting the defense access to both Mr. Hernandez himself and the forensic evidence about which he will testify. According to the Government, (i) defense counsel has reviewed the forensic findings and evidence on numerous occasions, (ii) the Defendant's own forensic expert has reviewed the forensic findings and

9

examination conducted by Mr. Hernandez, and (iii) members of Defendant's team have

"discussed the case over the phone with Mr. Hernandez." ECF No. 188 at 4.  Thus, for example,

the defense team has already seen the images that Mr. Hernandez allegedly found on the subject

hard drive; they have already received information about the location on the hard drive where the

items were reportedly found; they were provided evidentiary items that the Government claims

link Defendant to the hard drive; and they were provided Mr. Hernandez' report, which outlines

the reasons why Mr. Hernandez could not conduct an examination of Defendant's iPhone.  Given

these circumstances, Defendant's Rule 16 challenge rings hollow, and the motion at ECF No.

181 will therefore be denied. *See United States v. Eby,* No. 24-3716, 2025 WL 3688925, *4 (6th

Cir. Dec. 19, 2025) (rejecting defendant's Rule 16 challenge where defendant and his expert

witness had access to the underlying information that formed the basis of prosecution expert's

forensic analysis testimony for eleven months prior to trial and defendant did not explain how he

was surprised at trial or how the outcome of his case would have been different with the benefit

of a more detailed disclosure).

B.  Defendant's Rule 702 Challenge at ECF No. 182

Defendant next moves to preclude Mr. Hernandez's testimony under Federal Rule of

Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 (1993).

Defendant argues that Mr. Hernandez's methods have not been shown to be sufficiently reliable

and that Mr. Hernandez lacks the specialized training necessary to testify that some of the images

he located in his forensic examination contained visual depictions of minors engaging in sexually

explicit conduct.  Defendant requests that the Court hold a *Daubert* hearing and then exclude Mr.

Hernandez's testimony.

Rule 702 provides that "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

Fed. R. Evid. 702.

Rule 702 is construed as embodying three major requirements: (1) the proffered witness must be an expert; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (3) the expert's testimony must assist the trier of fact. *Pineda v. Ford Motor Co.*, 520 F.3d at 243 (3d Cir. 2008); *see also United States v. Walker*, 657 F.3d 160, 175 (3d Cir. 2011). Our Court of Appeals has sometimes referred to this "trilogy of restrictions on expert testimony" as "qualification, reliability and fit." *Langbord v. United States Dep't of Treasury*, 832 F.3d 170, 194 (3d Cir. 2016) (internal quotation marks and citation omitted).

"The Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact." *Pineda*, 520 F.3d at 243. In particular, "Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility." *Id.* (internal quotation marks and citation omitted). Accordingly, "[e]xclusion of expert testimony is the exception rather than the rule because vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Keller v. Feasterville Family Health Care Ctr.*, 557 F. Supp. 2d

11

671, 674 (E.D. Pa. 2008) (quoting Fed. R. Evid. 702, advisory committee's notes) (citing *Daubert*, 509 U.S. at 595). The burden to establish that each requirement is satisfied by a preponderance of the evidence rests with the party offering the expert testimony. *See Padillas v. Stork–Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999).

Here, Defendant challenges the first two requirements of Rule 702, *i.e.*, "qualification" and "reliability." We address each in turn.

*(i)    Qualification*

Defendant does not challenge Mr. Hernandez's qualifications as an expert in the areas of electronic-digital data acquisition and forensic examination.[1] Instead, Defendant argues that Mr. Hernandez is unqualified to testify about whether any images or videos at issue in this case qualify as visual depictions of minors engaging in sexually explicit conduct. Defendant posits that, because Mr. Hernandez lacks specialized training or credentials in age estimation, developmental indicators, or child victim identification, his opinion as to whether an image involves a minor is unreliable and lacks methodological foundation to support admissibility under Rule 702. *See* ECF No. 182 at 9-10.

In *United States v. Davis*, the U.S. Court of Appeals for the Third Circuit cautioned that

---

[1] The record establishes that Mr. Hernandez has been a "Digital Forensic Examiner II" for the Pennsylvania State Police since 2019. In that capacity, he has reportedly performed more than three hundred (300) forensic examinations on various digital devices, including computers, digital data storage equipment, digital cameras, and cell phones. Mr. Hernandez has numerous technical certifications, including "Certified Forensic Computer Examiner," which he obtained in 2019 after completing an 8-month program. While Mr. Hernandez has not authored any publications to date, he has twice testified as an expert witness in the Clearfield County Court of Common Pleas. *See* ECF Nos. 182-1 and 190 at 2. On this record, Mr. Hernandez's knowledge, training, and experience appear sufficient to qualify him as an expert in fields of electronic-digital data acquisition and forensic examination.

"[e]xpert testimony may be required to enable the fact finder to determine age in cases where the age of the actor in the video is difficult to determine." 41 F. App'x 566, 571 (3d Cir. 2002) (citing *United States v. Katz*, 178 F.3d 368, 373 (5th Cir. 1999)).  But "at the same time," the court noted that "'age is a matter on which everyone has an opinion. Knowingly or unknowingly, we all form conclusions about people's ages every day. It is therefore particularly appropriate for a lay witness to express an opinion on the subject.'" *Id.* (quoting *United States v. Yazzie*, 976 F.2d 1252, 1256 (9th Cir. 1992)).  In similar fashion, our Court of Appeals has determined that lay testimony may be sufficient to establish that pornographic images involved the use of actual minors, as opposed to computer-generated minors.  *See United States v. Destio*, 153 F. App'x 888, 892-93 (3d Cir. Nov. 14, 2005) ("In a prosecution under §2252(a)(4)(B), the government need not prove the identities of the children involved.  The government need only prove that the images involve actual children, and this may be done by a view of the images themselves, or by non-expert testimony.").

Numerous other courts of appeals have similarly rejected a *per se* rule that would require expert testimony to establish a victim's minority status in a child exploitation case.  *See, e.g., Katz*, 178 F.3d at 373 ("[W]hether the age of a model in a child pornography prosecution can be determined by a lay jury without the assistance of expert testimony—must be determined on a case by case basis."); *accord United States v. Dewitt*, 943 F.3d 1092, 1096 (7th Cir. 2019) ("In some cases, the question may be difficult and all but require the government to present expert evidence as part of carrying its burden of proving age beyond a reasonable doubt. . . . In many cases, however, the fact that the unidentified subject is a child will be obvious from appearance.") (citing *Katz*, 178 F.3d at 373); *United States v. Stahlman*, 934 F.3d 1199, 1222-1223 (11th Cir. 2019) (case agent's estimation that girl pictured in defendant's online ad was

between 10 and 12 years' old did not require specialized knowledge, as "any lay witness may properly estimate the age of a person in a photograph based solely on their perception"); *United States v. Batchu*, 724 F.3d 1, 8 (1st Cir. 2013) (explaining that expert testimony was unnecessary because a "multiplicity of indicators"—such as the victim's gait, conversation with the defendant, voice, and general demeanor—would indicate her age to a layperson); *United States v. Haymond*, 672 F.3d 948, 960 (10th Cir. 2012) (court noting that expert testimony may be necessary in some cases to determine that depicted individuals were minors, but also stating the "[w]e have previously allowed jurors to determine for themselves whether images involved minors without the benefit of expert testimony, particularly when the subjects were sufficiently young"); *United States v. Nelson*, 38 F. App'x 386, 392 (9th Cir. Mar. 5, 2002) ("There is no requirement that expert testimony be presented in child pornography cases to establish the age of children in the pictures.").

Thus, the case law from this and other circuits firmly refutes Defendant's assumption that expert testimony is necessarily required to establish the age of an individual depicted in an item of alleged CSAM. Accordingly, Defendant's motion at ECF No. 182 will be denied insofar as it seeks to preclude Mr. Hernandez from testifying about whether the CSAM he located on the subject hard drive depicted minors engaged in sexually explicit conduct. The denial will be without prejudice to Defendant's right to reassert a more particularized challenge at time of trial, to the extent Defendant can point to a specific image that is not amenable to lay interpretation.

*(ii)    Reliability*

According to the Defendant, Mr. Hernandez's report indicates that he performed his forensic examination using the following: "a Tableau Forensic USB Bridge which is a hardware write blocker that doesn't allow any writes to the source device while still being able to acquire a

14

forensic acquisition;" "Access Data FTK imaging software v.4.2.0.13, which is a software write protected imaging application that prevents any writes to the evidence device while creating a bit-by-bit duplicate image of the drive;" and Forensic Explorer v5.1.2(revision 9373d) to convert the acquired data into a readable format. *See* ECF No. 182 at 8. Defendant objects that [t]he notice does not include any information about how the various software programs actually work, including how they analyze data to reach results and conclusions. The notice does not indicate that Mr. Hernandez engaged in a forensic review or manual verification of the results and conclusions of the software programs, and it does not explain the extent of his reliance on software to flag files of interest from a device containing more than one million images. *Id.* Defendant posits that a hearing is required, so that this Court can determine "what methodology Mr. Hernandez used, whether he applied any method, and whether any opinions he has to offer are based on scientifically validated principles." *Id.* at 8-9.

"Under the Federal Rules of Evidence, a trial judge acts as a 'gatekeeper' to ensure that any and all expert testimony or evidence is not only relevant, but also reliable." *Pineda*, 520 F.3d at 243 (citation omitted). "It is so if based on the methods and procedures of science rather than on subjective belief or unsupported speculation...." *Schuchardt v. President of United States*, 802 F. App'x 69, 75 (3d Cir. 2020) (citation and internal quotation marks omitted).

"[T]he inquiry as to whether a particular scientific technique or method is reliable is a flexible one," *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 (3d. Cir. 1994), and in some cases, "the relevant reliability concerns may focus upon personal knowledge or experience." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999). "Admissibility does not hinge on whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research." *Cohen v. Cohen*, 125 F. 4th 454,

15

462 (3d Cir. 2025) (internal quotation marks and citation omitted). Instead, court look to

"whether the expert's testimony is supported by good grounds." *Id.* (internal quotation marks

and citation omitted). There is no "definitive checklist or test" in this regard, *Daubert*, 509 U.S.

at 593, but the following factors are relevant to the court's inquiry:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has
> been subject to peer review; (3) the known or potential rate of error; (4) the
> existence and maintenance of standards controlling the technique's operation; (5)
> whether the method is generally accepted; (6) the relationship of the technique to
> methods which have been established to be reliable; (7) the qualifications of the
> expert witness testifying based on the methodology; and (8) the non-judicial uses
> to which the method has been put.

*Cohen*, 125 F. 4th at 462 (citation omitted). No single factor is dispositive, but some analysis of

these factors is necessary. *Id.*

Despite this flexible standard, the Court must have an adequate record from which to

make a ruling on the reliability of Mr. Hernandez's methods. *See Oddi v. Ford Motor Co.*, 234

F.3d 136, 153 (3d Cir. 2000) (court had "an independent obligation to reach a decision upon a

record that had been adequately developed"); *see also Cohen*, 125 F. 4th at 460 (district court

may make a Rule 702 ruling without formal findings of fact "when working from an extensive

record").

Presently, the Court has the benefit of very little in the way of an evidentiary record.

Although the parties have submitted the Government's expert disclosure letters, these primarily

discuss Mr. Hernandez's background and the matters on which he is likely to testify. They

provide little insight into the methodologies Mr. Hernandez used to conduct his forensic

examination. Notably, the parties have not submitted Mr. Hernandez's expert report with their

memoranda, nor does the Court have the benefit of extensive deposition testimony, as might be

16

the case in a civil action. *See Oddi*, 234 F.3d at 153-55 (no *Daubert* hearing was required where "the evidentiary record . . . was far from scant" and included "depositions and affidavits of the plaintiff's experts"). So, notwithstanding the Government's representation that Mr. Hernandez's forensic tools are well-accepted in the law enforcement community, the court has no evidentiary record from which it can make such a finding for purposes of this case. Accordingly, the Court will grant Defendant's request for a *Daubert* hearing, so that a more definitive analysis of Mr. Hernandez's methodologies and conclusions can be made prior to trial.

At the hearing, the Government may question Mr. Hernandez about his expert training and qualifications, his knowledge of the relevant forensic software, his methodology and application of the software in this case, whether the software has gained widespread acceptance as a reliable forensic tool, and any matters bearing on the reliability of Mr. Hernandez's methodologies and conclusions, as outlined above. And though the Court presently makes no ruling about the admissibility of Mr. Hernandez's testimony under Rule 702, the Court notes that his testimony might well be admissible under the standards applicable to lay witnesses, even if he cannot testify as an expert. *See, e.g., United States v. Ovies*, 783 F. App'x 704, 707 (9th Cir. 2019) (finding that district court did not abuse its discretion by allowing agent to testify about using Cellebrite to extract data from defendant's cell phone on non-expert basis, where agent testified only about the steps he took using the Cellebrite program and did not opine as to the reliability or any other aspect of the Cellebrite technology, and his testimony was not based on technical or specialized knowledge); *United States v. Patel*, No. 23-CR-30076-SPM, 2025 WL 80388, at *4 (S.D. Ill. Jan. 13, 2025) (law enforcement officers did not need to be qualified as experts in order to discuss the data obtained from the defendant's cell phone, provided they "[did]not offer testimony on the mechanics of the Cellbrite software").

17

For the reasons stated, the Court will grant the Defendant's motion for a *Daubert* hearing and will reserve ruling on the admissibility of Mr. Hernandez's expert testimony pending an opportunity to evaluate the evidentiary record.

*The Government's Motion in Limine at ECF No. 186*

The Government has filed a motion *in limine* at ECF No. 186 to preclude Defendant from putting forth an "alternative perpetrator" defense. The Government surmises that Defendant may claim that his roommate, who subscribed to the internet service at the residence, was the party responsible for the crimes at issue in this case. Alternatively, the Government surmises that Defendant may point to a third individual -- i.e., a prior roommate who is unnamed but referenced briefly in an FBI interview note. Or, the Government posits, Defendant may point to the fact that another individual's IP address was included in the cyber-tip that Tumblr passed along to NCMEC. The Government insists that none of these potential alternative perpetrators have a sufficient nexus to the criminal conduct at issue in this case and, therefore, this entire line of defense should be precluded.

Pursuant to Federal Rule of Evidence 401, evidence is considered "relevant" if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Pursuant to Federal Rule of Evidence 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Consistent with these principles, a defendant may present evidence that someone else is guilty of the crime charged if that evidence comports with Rules 401 to 403 and is not merely speculative:

18

Although there is no doubt that a defendant has a right to attempt to establish his innocence by showing that someone else did the crime, a defendant still must show that his proffered evidence on the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the asserted "alternative perpetrator." It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime. Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice.

*United States v. Jordan*, 485 F.3d 1214, 1219 (10th Cir. 2007) (quoting *United States v. McVeigh*, 153 F.3d 1166, 1191 (10th Cir.1998)). *Accord Wade v. Mantello*, 333 F.3d 51, 62 (2d Cir. 2003) (same) (*quoting McVeigh*, 153 F.3d at 1191); *United States v. Lighty*, 616 F.3d 321, 358 (4th Cir. 2010) ("When determining whether evidence of an alternative perpetrator should be admitted at trial, courts have found that such evidence 'is relevant, but there must be evidence' of a 'connection between the other perpetrators and the crime, not mere speculation on the part of the defendant.' . . . Alternative perpetrator cases thus balance two evidentiary values: the admission of relevant evidence probative of defendant's guilt or innocence under Rule 401 with the exclusion of prejudicial, misleading, and confusing evidence under Rule 403.") (quoting *DiBenedetto v. Hall*, 272 F.3d 1, 8 (1st Cir.2001) and citing *Jordan*, 485 F.3d at 1218-19); *United States v. Crumpton*, No. 24-10925, 2025 WL 880271, at *2 (11th Cir. Mar. 21, 2025) (district court did not violate defendant's constitutional right to present a complete defense by excluding evidence that defendant's friend and roommate was guilty of the charged offenses, where there was insufficient nexus between the roommate and the robbery at issue, and the probative value of defendant's alternative perpetrator evidence was substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury).

In light of the foregoing principles, the Court will deny the Government's motion in *limine* at this time, as the admissibility of any "alternative perpetrator" evidence is better

resolved in the context of trial.  If and when the Defendant decides that he wants to pursue such a defense, the Court can revisit the issue and, with the benefit of having heard the Government's evidence and receiving a proffer from the defense, the Court will likely be able to make a more informed determination about whether the requisite nexus exists between the putative perpetrator and the crimes at issue.  Accordingly, the motion at ECF No. 186 will be denied without prejudice to the Government's right to reassert its arguments at a later point in these proceedings, when the evidentiary record is more fully developed.

*The Defendant's Motion in Limine at ECF No. 187*

In July 2024, the Government filed a notice of its intent to introduce certain CSAM into evidence at trial, which was scheduled at that time to commence on August 12, 2024.  The Government's notice specified that it planned to introduce 11 out of the 45 images of CSAM and 1 out of 3 videos of CSAM that were recovered as evidence in this case.  The Government provided a description of each picture to be used and advised that it planned to show each of the 11 images to the jury for no more than 10 seconds.  The Government further advised that the video was approximately twenty seconds in length and involved "a minor female naked." ECF No. 98, at 2.  The prosecution indicated that it would show the jury a short segment of the video clip with no audio sound.  The Government claimed that this sample of twelve items was "representative" of the 45 images and 3 videos of CSAM found on the hard drive in Defendant's residence.

After Defendant secured new counsel and the trial date was continued, the Government filed a supplemental notice of CSAM items it intends to utilize at trial.  ECF No. 177.  This

involves an additional 5 images and an additional video segment, all of which the Government describes in its notice.

At ECF No. 187, Defendant has filed a motion *in limine* to limit the Government's use of this evidence. Defendant does not dispute that certain of the images found on the hard drive as well as in a particular Tumblr account involve images of minors engaged in sexually explicit conduct. He is also willing to concede that someone viewing these images would *know* they depict minors engaging in sexually explicit conduct. In light of these stipulations, Defendant contends that the probative value of the images is "substantially decreased." ECF No. 187 at 4. Defendant adds that the images are both cumulative and highly prejudicial. Defendant posits that depictions of minors engaged in sexually explicit conduct tend to trigger an "extreme emotional response" in jurors. *Id.* at 5. He insists that the danger of unfair prejudice is even greater here, where certain images involve particularly objectionable conduct, such as a prepubescent female licking a toilet, being vaginally penetrated, or receiving oral sex. And because the images depict adults present with, or having actual contact with, the victimized minors, Defendant fears that the jury will be misled into supposing that he is the adult pictured in the images or that he otherwise knows or associates with the adults who are depicted. Based on the facts at hand, Defendant argues that the danger of unfair prejudice substantially outweighs the minimal probative value of the Government's proffered evidence.

The Government responds that the Court should conduct a review of the evidence in question and then assess its probative value and potential for unfair prejudicial impact. ECF No. 191. The Government posits that, following its review, the Court should admit most, if not all, of the challenged evidence. The Government reasons that Defendant should not be permitted to sanitize the evidence, or dictate how the Government presents its case, through stipulations.

Defendant has replied to the Government's response, ECF No. 191, and the Court has reviewed that filing as well. In relevant part, Defendant insists that the Government has chosen to present the most inflammatory and gratuitously offensive images to the jury. *Id.* at 3.

As a general proposition, the "prosecution is entitled to prove its case by evidence of its own choice," and "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Old Chief v. United States*, 519 U.S. 172, 187-88 (1997). Still, the prosecution's evidence is subject to a Rule 403 analysis and may be excluded if its probative value is "substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "The existence of a stipulation is a relevant factor in the Rule 403 balancing process," *United States v. Finley*, 726 F.3d 483, 491-92 (3d Cir. 2013), but "an offer of stipulation does not make evidence inadmissible." *United States v. Heatherly*, 985 F.3d 254, 269 (3d Cir. 2021).

Under the law of this circuit, the court must normally view images of CSAM prior to making a ruling on which, if any, may be shown to the jury. *See United States v. Cunningham*, 694 F.3d 372, 383 (3d Cir. 2012). And our Court of Appeals has "urged[d] trial courts to articulate their Rule 403 analyses on the record," noting that this "is especially important for inflammatory evidence." *United States v. Heatherly*, 985 F.3d 254, 268 (3d Cir. 2021). Among the factors that we should consider in conducting a Rule 403 analysis are "whether the Government has less egregious photos and videos it can offer for the same evidentiary propositions." *United States v. Long*, 92 F. 4th 481, 489 (3d Cir. 2024) (noting that, "[i]n both [*United States v. Welshans,* 892 F.3d 566 (3d Cir. 2018)] and *Cunningham*, the Government had

less grotesque exhibits with largely the same probative value, which factored into the courts' findings of unfair prejudice").

Pursuant to this Court's directive, the Government has produced a thumb drive containing the CSAM items outlined in its previous notices. Accordingly, the Court will take Defendant's motion at ECF No. 187 under advisement pending its review of those items and will issue a more definitive Rule 403 analysis and ruling in due course. To assist the undersigned's review, the parties will be directed to confer and jointly submit to the Court a description of other items of alleged CSAM that are not present on the Government's thumb drive, so that the Court can better discern whether the items intended for presentation to the jury are truly a fair representation of the CSAM evidence as a whole, and/or whether less egregious images would serve the same evidentiary purpose. The parties should also indicate in their filing whether there is consensus as to the admissibility of any particular CSAM items.

### The Defendant's Motion in Limine at ECF No. 196

At ECF No. 196, the Defendant has filed a motion for an attorney-led *voir dire* process. Defendant asserts that questioning by counsel is a more effective method for assessing bias than is questioning by judges, because people are more willing to disclose information to those whom they perceive as having similar status to themselves. When answering to a highly esteemed figure such as a judge, Defendant posits, jurors tend to offer the "socially desirable" response, rather than the most accurate one. ECF No. 196 at 3 (citing Neil Vidmar, *When All of US Are Victims: Juror Prejudice and 'Terrorist' Trials*, 78 Chi.-Kent L. Rev. 1143, 1150 (2003)). Defendant further posits that attorney-led *voir dire* is more practical and efficient because the attorneys know the case better and are therefore better positioned to ask relevant questions

23

bearing on the evidence that will be presented. Defendant notes that this process eliminates the need for counsel to submit proposed *voir dire* in advance of trial, raise objections during the process, and the like.  Finally, Defendant maintains that attorney-led questioning creates a more reliable record and reduces post-trial speculation about what additional probing might have revealed concerning possible juror bias.  *See* ECF No. 196.

Defendant also advocates specifically for a *voir dire* process whereby jurors would fill out a written questionnaire when they report for duty.  A series of questions would then be asked of the entire venire in open court, and an opportunity would be given for individual follow up on any question asked either on the form or in open court.  Defendant requests that the questionnaire include certain questions specifically related to the subject matter of this prosecution which, he argues, will encourage jurors to be candid about highly sensitive and emotional topics, like personal or family experience with victimization.  He requests certain modifications to the list of questions that are required to be asked in open court under our local rules.  *See* ECF No. 197.

The Government opposes both of Defendant's requests. The prosecution contends that Defendant's proposals are contrary to the Court's prior Jury Trial Order, *see* ECF No. 138, ¶6, inconsistent with the Local Rules, and unsupported by precedent.  *See* ECF No. 200.

Federal Rule of Criminal Procedure 24 provides that "[t]he court may examine prospective jurors or may permit the attorneys for the parties to do so."  Fed. R. Crim. P. 24(a)(1).  If the court examines the jurors, however, it "must permit the attorneys for the parties to: (A) ask further questions that the court considers proper; or (B) submit further questions that the court may ask if it considers them proper."  Fed. R. Crim. P. 24(a)(2).  Our local rules recognize the presiding judge's discretion to require potential jurors to complete a questionnaire before the commencement of *voir dire*.  LCrR24.2.  Whether or not a questionnaire is utilized,

the court is required to ensure that certain questions are posed during the examination of prospective jurors. *See* LCrR24.2(B) and (C). Case law confirms that the trial court has broad discretion in how to most effectively conduct jury selection. *See Waldorf v. Shuta*, 3 F.3d 705, 710 (3d Cir. 1993) ("[T]he method of conducting the voir dire is left to the sound discretion of the district court.").

Having reviewed and considered the parties' respective arguments and submissions, the Court is not persuaded that attorney-led *voir dire* is a necessary or preferred method for ensuring an impartial jury. While the Court appreciates Defendant's arguments and concerns, the undersigned is confident that its standard protocol for examining jurors will effectively eliminate those individuals who are incapable of adhering to the Court's instructions, while also maximizing efficiency and ensuring an atmosphere of neutrality. Accordingly, Defendant's motion at ECF No. 196 for an attorney-led *void dire* process will be denied.

The Court will take under advisement Defendant's Proposed Voir Dire Process, ECF No. 197, insofar as the Defendant requests that (a) the jury questionnaire include fourteen (14) questions bearing on the subject matter of this case, and (b) twenty-five (25) additional questions be asked in open court, as outlined in Defendant's filing. As to these matters, the Court will render a more definitive ruling at a later point in the proceedings, pending further discussion with counsel.

### *The Government's Motion at ECF No. 213*

Finally, the Government has filed a motion at ECF No. 213 to exclude the Defendant's expert, Glenn Bard, from testifying at trial. The Government argues that Defendant's expert notice does not conform to the requirements of Rule 16 because it does not set forth "a complete

statement of all opinions that the defendant will elicit from the witness in the defendant's case-in-chief" and "the bases and reasons for [those opinions]."  Fed. R. Crim. P. 16(b)(1)(C)(iii).

The Court is inclined to agree that the disclosures concerning Mr. Bard are deficient.[2] Whereas the Government's supplemental disclosure lists specific conclusions or findings to which Mr. Hernandez will testify (*e.g.*, he located 45 images and 3 videos of CSAM on the hard drive in a particular location, he found two specific items on the hard drive circumstantially linking Defendant to that device, digital data shows that Defendant obtained his phone in October 2019, Chromebooks do not typically store data, Mr. Hernandez could not perform an examination of Defendant's cell phone, etc.), the Defendant's disclosure includes only general topics about which Mr. Bard may testify.  For example, Defendant's disclosure letter states that "Mr. Bard may provide information about the specific steps he took in Mr. Bennett's case, including the tools and software utilized, and what those steps revealed," ECF No. 216 , but the disclosure does not state what those "tools and software" were or what Mr. Bard found as a result of his examination.  Similarly, "Mr. Bard may also provide information about what social media applications, email accounts, and other information are on the devices seized in this case" *id.,* but Defendant's disclosure provides no further information about Mr. Bard's findings.  And whereas the Government has provided the defense Mr. Hernandez's report, as well as access to its forensic evidence and an opportunity to speak directly with Mr. Hernandez, it does not appear

---

[2] Defendant argues that the Government's motion is premature because the prosecutor did not comply with local "meet and confer" requirements prior to filing. While the Court does not condone these technical rule violations and urges future compliance, the Court has nevertheless opted to address the merits of the Government's motion as a matter of expediency.

Defendant also argues that his disclosure requirements are not triggered until the Government has complied with *its own* expert disclosure obligations, *see* Fed. R. Crim. P. 16(b)(1)(C)(i), and "the notice for Mr. Bard can only be as specific as the notice of Mr. Hernandez." ECF No. 227 at 3.  As stated herein, the Court has determined that the Government has complied with its obligations under Rule 16(a)(1)(G).

that the defense has afforded the prosecution similar, reciprocal disclosures. Accordingly, the Court finds the Government's objections to the defense disclosures to be well-taken.

On the other hand, the Court does not agree that these deficiencies warrant the exclusion of Mr. Bard's testimony. Instead, the Court will direct defense counsel to provide a supplemental disclosure to the Government, which may consist of written disclosures or other measures akin to those provided by the prosecution.

*Conclusion*

Based upon the foregoing reasons, the Government's motion in limine at ECF No. [97] will be granted, and the parties will be precluded from mentioning during the trial, either directly or indirectly, the statutory minimum or maximum, possible sentences, or possible sentencing ranges involved in the case.

The Defendant's motion in limine at ECF No. [180] will be denied, as the Court does not find anything technically wrong or inappropriate with regard to the terms "CSAM" or "child sex abuse material." However, the Government will be encouraged to avoid any unnecessary complications in this regard by referring to, *e.g.*, the "images in question," or by utilizing, when possible, more neutral terms, as discussed herein.

The Court will deny Defendant's motion *in limine* at ECF No. [181] to preclude the Government's expert from testifying based on alleged Rule 16 violations.

The Defendant's motion *in limine* filed at ECF No. [182] will be granted with respect to Defendant's request for a *Daubert* hearing concerning the reliability of Mr. Hernandez's forensic examination methods. The Court will reserve ruling on the admissibility of Mr. Hernandez's expert testimony pending an opportunity to evaluate the evidentiary record. Defendant's motion

will be denied insofar as it seeks to preclude Mr. Hernandez from testifying about whether the CSAM he located on the subject hard drive depicted minors engaged in sexually explicit conduct.  The denial will be without prejudice to Defendant's right to reassert a more particularized challenge at time of trial, to the extent Defendant can point to a specific image that is not amenable to lay interpretation.

The Government's motion at ECF No. [186] will be denied without prejudice. The Government will be permitted to reassert its arguments regarding any "alternative perpetrator" defense at a later point in these proceedings, when the evidentiary record is more fully developed.

The Defendant's motion *in limine* at ECF No. [187] will be taken under advisement, pending the Court's review of the disputed evidence.  To assist the Court's review, the parties will be directed to confer and jointly submit to the Court a description of other items of alleged CSAM that are not present on the Government's thumb drive, along with an indication whether there is consensus as to the admissibility of any particular CSAM items.

The Defendant's motion at ECF No. [196] for an "attorney-led" *voir dire* process will be denied.  The Court will take under advisement Defendant's Proposed Voir Dire Process, ECF No. [197], insofar as the Defendant requests that (a) the jury questionnaire include fourteen (14) questions bearing on the subject matter of this case, and (b) twenty-five (25) additional questions be asked in open court, as outlined in Defendant's filing.  As to these matters, the Court will render a more definitive ruling at a later point in the proceedings, pending further discussion with counsel.

28

Finally, the Government's motion at ECF No. [213] will be granted insofar as the Defendant will be directed to supplement his disclosure regarding Mr. Bard's proposed expert testimony.  The motion will be denied without prejudice insofar as the Government seeks to preclude Mr. Bard from testifying at trial.

An appropriate Order follows.

Susan Paradise Baxter
United States District Judge

29